******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARY STEWART *v.* JEFFREY STEWART
(AC 36920)

Gruendel, Alvord and Flynn, Js.

*Argued February 19—officially released June 2, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Wenzel, J.)

*Jeffrey Stewart*, self-represented, the appellant
(defendant).

*Mary Rainer*, self-represented, the appellee
(plaintiff).

*Opinion*

PER CURIAM. The defendant, Jeffrey Stewart, appeals from the judgment of the trial court rendered in response to his postjudgment motion for clarification of a judgment of dissolution. The defendant requested that the court interpret an order in the judgment of dissolution to determine which postdissolution expenses he could recover prior to the division of the net proceeds from the sale of the former marital residence. On appeal, the defendant claims that the court (1) misinterpreted the language of its prior order in the dissolution judgment, (2) improperly modified, rather than clarified, the judgment of dissolution by imposing additional conditions for the reimbursement of expenses, and (3) deprived him of his constitutional right to due process.[1] We affirm the judgment of the trial court.

The twenty-five year marriage of the defendant and the plaintiff, Mary Stewart,[2] was dissolved by the court, *Wenzel, J.*, on May 6, 2011. At that time, the parties were represented by counsel.[3] The judgment of dissolution included, inter alia, orders pertaining to the sale of the marital residence in Greenwich (property). In relevant part, those orders provided: "The court will retain jurisdiction over the sale and marketing of the property to resolve any disputes and may adjust the percentage of distribution or charge a party's distribution in light of their conduct.

"The defendant may remain in the marital residence until the time of sale. If he remains in the marital residence he shall have exclusive possession thereof, and shall be responsible for all the costs associated with the occupancy and ordinary maintenance of the property, including mortgage payments and taxes until the sale of the residence. Any extraordinary repair costs or renovation costs, exceeding $300 per issue, paid by the defendant to maintain or restore the house to a saleable condition shall be repaid to the defendant from the proceeds of the sale of the marital home prior to dividing the net sale proceeds.

"*In the event the defendant vacates the marital residence he shall continue to pay all ongoing expenses as if he occupied the residence, but will be entitled to recover such expenses, extraordinary expenses from the gross proceeds of the sale.*

"During the period of the defendant's occupancy, the [plaintiff] shall have reasonable access to the marital home upon notice to review and refresh her memory, and she will be permitted access to take photographs, or video as to personal property, and to inspect the condition of the property.

"Upon sale of the marital residence, the net proceeds—that is, less mortgage payoff, normal and customary closing adjustments, all taxes, commissions and

legal fees of the sale—shall be divided between the parties 45 percent to the plaintiff and 55 percent to the defendant. Distribution shall be made at the closing." (Emphasis added.)

On June 5, 2013, the defendant filed a postjudgment motion for clarification. In his motion, the defendant stated: "The defendant avers he did not remain in the marital residence, that he vacated the house on June 30, 2012, and he has been paying all ongoing expenses for the marital property as if he occupied the residence. The defendant maintains that the judgment of dissolution provides that he be reimbursed, from the gross proceeds of the sale of the residence, for all ongoing expenses he has paid after he vacated the residence and all extraordinary expenses he has paid before and after he vacated the residence. The plaintiff maintains that the defendant is only entitled to reimbursement for extraordinary expenses paid by the defendant." The defendant requested that the court clarify its order in the judgment of dissolution relating to the reimbursement of ordinary expenses from the proceeds of the sale.

The closing on the marital residence took place on July 31, 2013, and the net proceeds were held in escrow pending the court's determination on the defendant's motion for clarification. A hearing on the defendant's motion was scheduled for August 7, 2013, at which time the defendant, represented by counsel, and the self-represented plaintiff appeared to present their claims. Judge Wenzel, the same judge who presided over the parties' dissolution action, asked the parties whether there was a dispute as to the date that the defendant had vacated the property. When the plaintiff responded "[a]bsolutely," the defendant's attorney represented that she had not been aware that the date was an issue until that very moment.

After hearing the parties' proposed interpretations of the relevant language in the dissolution order, the court stated: "We need to determine the date the [defendant] vacated the premises, as that might be important. We need to determine the meaning of the language in the decree. And then, we need to . . . determine which expenses are covered and which are not." The plaintiff responded: "I would ask the court to consider whether or not there is merit in addressing the issue of the date of vacancy of the property prior to looking into the interpretation of that phrase because I maintain that, until the seventeenth, or actually until the closing of the property, [the defendant] never actually vacated the property." The court and the defendant's counsel agreed that the issue regarding the date that the property had been vacated should be addressed first, but the defendant's counsel represented that she was not ready to proceed with evidence on that issue because the plaintiff's position had just been made known to

her that day. Given those circumstances, the court proposed continuing the matter to give both parties the opportunity to gather the necessary documents for a hearing on the motion for clarification. The defendant indicated that he was in the process of relocating from California to Connecticut, and that a box with his documents was still in California. Accordingly, the matter was continued three months to November 14, 2013.

On November 14, 2013, the parties appeared before the court and presented their evidence. As evidence that he had vacated the marital residence on June 30, 2012, the defendant submitted an invoice from the moving company that transported his personal belongings to California and a lease for an apartment that he had rented in California. Additionally, he testified that he had moved to California to pursue a business opportunity. To avoid a substantial increase in the homeowner's insurance costs for the marital residence, the defendant gave permission to his son and two of his son's friends to occupy the property. Although the defendant was terminated from his new employment on August 24, 2012, he testified that he remained in California and "was looking for other business opportunities and trying to raise capital for another business. [The defendant] didn't know where [he] was going to wind up living. [Consequently, he] did not change [his] legal residence from [Connecticut] during that time." The defendant testified that he did not change his driver's license or automobile registration from Connecticut to California, that he remained a registered voter in Connecticut and voted in Connecticut by way of an absentee ballot, that he paid income tax in California as a legal resident of Connecticut, and that the legal address for his business was the address of the Greenwich marital residence.

The matter was continued to December 10, 2013, at which time the parties rested and presented their closing arguments to the court. At the conclusion of the hearing, the court stated that it would review the terms of the dissolution decree, the exhibits and its notes before issuing a decision.

By memorandum of decision issued February 27, 2014, the court, after quoting from the relevant order in the judgment of dissolution, concluded that "the defendant is entitled to recover the extraordinary expenses whenever they occurred; but [he] can recover ordinary expenses only if he had already vacated the residence."[4] The court noted that the defendant was seeking reimbursement for ordinary expenses for the period from July, 2012, when he claimed to have vacated the marital residence, through July 31, 2013, the date of the closing on the property. The court summarized the evidence presented at the hearing, and stated: "Most persuasive in this regard was the evidence that the defendant always preserved the option to return and

resume using the residence to the exclusion of the plaintiff. . . . Perhaps most convincing was the defendant's own testimony that if things did not work out in California his plan was to return to the residence and resume living there." The court then made the following determination: "Given all this evidence, the court finds that the defendant has not established that he ever departed the residence and is not entitled to recover any ordinary or customary expenses associated with the property."

The court then reviewed the defendant's claim for extraordinary expenses and rendered the following judgment: "[T]he court determines that the defendant is entitled to recover a total of $24,570 from the remaining net assets prior to the distribution to the parties according to the percentages previously determined by the court." The defendant filed a "motion to reargue in anticipation of appeal" pursuant to Practice Book § 11-11, which the court denied on May 20, 2014. This appeal followed.

The gravamen of the defendant's appeal is that the trial court incorrectly determined that he did not vacate the marital residence on June 30, 2012, which would have entitled him to reimbursement for all ordinary expenses incurred from that date to the date of the closing on the property. Specifically, the defendant argues that "[t]he plain language meaning of 'vacate' is clear and unambiguous," and that he "proved that he complied with this clear, sole requirement." The court's interpretation of the word "vacate," the defendant claims, resulted in the imposition of "additional requirements"[5] that resulted in a modification, rather than a clarification, of the judgment of dissolution. The defendant further argues that the court's determination violated his due process rights: "By failing to include additional requirements in the original divorce orders, but using them as the basis of its February 27, 2014 decision, the trial court deprived the defendant of his right to due process by not permitting him the opportunity to comply, and by not allowing him an opportunity to mount a relevant defense."

We begin with our standard of review. "In order to determine whether the trial court properly clarified ambiguity in the judgment or impermissibly modified or altered the substantive terms of the judgment, we must first construe the trial court's judgment. It is well established that the construction of a judgment presents a question of law over which we exercise plenary review. . . . In construing a trial court's judgment, [t]he determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a

whole. . . . In addition . . . because the trial judge who issues the order that is the subject of subsequent clarification is familiar with the entire record and, of course, with the order itself, that judge is in the best position to clarify any ambiguity in the order. For that reason, substantial deference is accorded to a court's interpretation of its own order. . . . Accordingly, we will not disturb a trial court's clarification of an ambiguity in its own order unless the court's interpretation of that order is manifestly unreasonable." (Citations omitted; internal quotation marks omitted.) *Bauer* v. *Bauer*, 308 Conn. 124, 131–32, 60 A.3d 950 (2013).

"[T]he purpose of a clarification is to take a prior statement, decision or order and make it easier to understand. Motions for clarification, therefore, may be appropriate where there is an ambiguous term in a judgment or decision . . . but, not where the movant's request would cause a substantive change in the existing decision. Moreover, motions for clarification may be made at any time and are grounded in the trial court's equitable authority to protect the integrity of its judgments." (Internal quotation marks omitted.) *Light* v. *Grimes*, 136 Conn. App. 161, 169, 43 A.3d 808, cert. denied, 305 Conn. 926, 47 A.3d 885 (2012).

In the present case, both parties wanted the court to clarify whether the defendant was entitled to reimbursement of ordinary expenses from the date that he claimed he vacated the marital property until the date of the closing on the property. Both sides submitted evidence, documentary and testimonial, regarding the amount of the expenses claimed by the defendant and the circumstances under which he had left the property to travel to California. On August 7, 2013, which was the first scheduled hearing on the defendant's motion for clarification, the plaintiff stated her position that the defendant had never vacated the property. When the defendant's counsel represented that she had been unaware of the plaintiff's claim until that day, the court continued the matter and gave the parties more time than it initially intended because the defendant said his documents were still in California. His due process claim that the court's interpretation of the word "vacate" left him unprepared to mount an effective defense, therefore, is without merit. Evidence was presented at a hearing more than three months later, on November 14, 2013, and the hearing was then continued to December 10, 2013, which gave the defendant one additional month to gather any remaining evidence.

We conclude that the court's interpretation of the word "vacate," in the context of the judgment of dissolution, is reasonable. That judgment provided that the defendant "may remain in the marital residence until the time of sale," and that "[i]f he remains in the marital residence, he shall have *exclusive possession* thereof, and shall be responsible for all the costs associated

with the occupancy and ordinary maintenance of the property . . . ." (Emphasis added.) The court included an additional provision in the judgment to address the reimbursement of expenses if the defendant decided not to remain in the marital residence. "In the event the defendant *vacates* the marital residence he shall continue to pay all ongoing expenses as if he occupied the residence, but will be entitled to recover such expenses, extraordinary expenses from the gross proceeds of the sale." (Emphasis added.)

The parties do not challenge the court's determination in the memorandum of decision that the foregoing order means that "the defendant is entitled to recover the extraordinary expenses whenever they occurred; but can recover ordinary expenses only if he had already vacated the residence." The parties disagree as to the court's interpretation of the word "vacate"; the defendant argues that the court ignored the plain meaning of the word. "Vacate" is defined: "To surrender occupancy or possession; to move out or leave—the tenant vacated the premises." Black's Law Dictionary (9th Ed. 2009). We agree with the trial court that a person does not "vacate" a property simply by "leav[ing]" the property and paying a moving company to transport belongings to a different location, as the defendant argued at the hearing on the motion for clarification, when that person reserves the right to return to the property.

The record supports the court's determination that the defendant did not vacate the property, i.e., he did not surrender occupancy or possession. The defendant had been awarded exclusive possession of the property by the terms of the judgment of dissolution. The court found that no credible evidence had been presented to establish that he had ever relinquished that right. The court further found from the evidence submitted that the defendant (1) permitted his son and two of his son's friends to occupy the property while he was in California, (2) used the marital residence to maintain his Connecticut driver's license, (3) claimed to be a Connecticut resident for tax purposes, (4) did not state in clear terms that the plaintiff could reoccupy the property, and (5) testified, as summarized by the court, "that if things did not work out in California, his plan was to return to the residence and resume living there."[6] The factual findings of the court are not clearly erroneous, and we agree with the court's interpretation of the word "vacate" as that term was used in the judgment of dissolution. For those reasons, the court's clarification was not manifestly unreasonable and did not change or modify the judgment. See *Bauer* v. *Bauer*, supra, 308 Conn. 131–32.

The judgment is affirmed.

[1] Because these three claims are interrelated, we address them together in this opinion.

[2] The plaintiff is now known as Mary Rainer.

[3] On appeal, both parties are self-represented.

[4] The parties do not challenge this interpretation of the relevant language in the judgment of dissolution, nor do they challenge the court's determination of which of the defendant's claimed expenses were extraordinary expenses and which of those claimed expenses were ordinary expenses.

[5] The only "additional requirements" articulated by the defendant in his appellate brief were that, in addition to leaving the marital property, the defendant had to "cease using it for any and all purposes, and any other requirements the court saw fit to impose . . . ."

[6] The defendant testified as follows: "And after [my employment in California was terminated], I was looking for other business opportunities and trying to raise capital for another business. And so during that time, I didn't know where I was going to wind up living. So I—I did not change my—my legal residence from [the marital residence address] during that time."

The defendant further testified: "I stayed in California with the intent of trying to figure out what I was going to do next. Whether I was going to find employment there or return to Connecticut or whatever."

The court asked the defendant the following question: "[I]n October of 2012 . . . you had been terminated two months before, things were up in the air you said. If, in October of 2012, you decided California is not working out, did you have any place to go other than back to the residence in Connecticut?" The defendant responded: "No. That would have been the only place to go." He then qualified his response by saying that he could have stayed in a hotel or with friends.